# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-19-00598-CR

---

**Christopher Wayne West, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 21ST DISTRICT COURT OF LEE COUNTY
### NO. 8833, THE HONORABLE CARSON TALMADGE CAMPBELL, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Christopher Wayne West entered a plea of not guilty to driving while intoxicated, third offense or more. *See* Tex. Penal Code §§ 12.42, 49.09(b). The case proceeded to trial, and a jury found him guilty as charged. The jury also found two enhancement paragraphs to be true and assessed West's punishment at ninety-nine years of confinement with the Texas Department of Criminal Justice. West now appeals, arguing that he suffered ineffective assistance of counsel when his attorney failed to raise a for-cause objection to a certain venireperson and failed to timely move to suppress certain evidence. We will affirm the judgment of conviction.

### BACKGROUND

The facts surrounding West's offense are not in dispute. On February 14, 2018, two men from the Giddings Police Department—Sergeant Stephen Stem and Officer Daniel Turner—were directing traffic at an intersection on US Highway 290, where a traffic signal was

under repair. Both officers had parked their patrol cars in the outside lane of the four-lane highway, leaving the cruisers' red and blue lights illuminated to help alert drivers of the need to slow down and change lanes.

While the officers were directing traffic, a white Honda struck the rear of Sergeant Stem's cruiser. The driver of that Honda was later identified as West. West's girlfriend was also in the vehicle. Stem instructed West to pull the Honda into a parking lot to allow Stem to work the scene and obtain insurance information. West complied with the request.

Stem later testified that, upon making initial contact with West, Stem began to suspect that West might be intoxicated. Stem's testimony characterized West as slurring his speech, unable to maintain his balance, and smelling of alcohol. According to Stem, West admitted to having recently been drinking and said to Stem, "Go ahead and take me to jail . . . I'm drunk." Stem asked West to perform the standardized field sobriety test, but West refused. When asked to explain the refusal, West replied, "I'm going to fail because I'm drunk." West then refused to take a breathalyzer test or submit to a blood draw without a warrant. During the subsequent search of West's vehicle, Stem found several empty bottles of alcoholic beverages.

Stem learned that West had been previously convicted of driving while intoxicated and prepared an affidavit for a search warrant, which was presented to the Justice of the Peace for Precinct 2 in Lee County. Upon obtaining the search warrant, a blood sample was drawn and analyzed. The results revealed .235 grams of alcohol per 100 milliliters of blood. A grand jury later indicted West for "driving while intoxicated—3rd or more—habitual" in violation of Section 49.09(b) of the Penal Code and subject to an enhancement set forth by Section 12.42 of that Code. The first attempt to try West's case ended in mistrial when the presiding judge concluded that multiple members of the jury array had expressed "confus[ion]"

over the State's burden of proof, leaving the judge unable to "seat a fair and impartial jury." West's case was rescheduled, and the court empaneled a new jury, which ultimately found West guilty of driving while intoxicated and found the enhancement allegations true. The jury sentenced West to ninety-nine years of confinement.

On appeal, West complains of two decisions by counsel. First, counsel objected to venireperson 18 for cause and then withdrew that for-cause objection, instead using a peremptory strike that West contends could and should have been used against another venireperson. Second, counsel belatedly filed a motion to suppress the evidence of the results of West's blood analysis; West contends the motion would have been successful if timely filed.

## DISCUSSION

"To establish ineffective assistance of counsel, an appellant must demonstrate by a preponderance of the evidence a deficient performance by counsel and the defendant suffered prejudice as a result." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Miller v. State*, 548 S.W.3d 497, 499 (Tex. Crim. App. 2018). The appellant must first demonstrate that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687–88; *Ex parte Scott*, 541 S.W.3d 104, 115 (Tex. Crim. App. 2017). The appellant must then show the existence of a reasonable probability—one sufficient to undermine confidence in the outcome—that the result of the proceeding would have been different absent counsel's deficient performance. *Strickland*, 466 U.S. at 694; *Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700; *accord Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

3

Our review of counsel's representation is highly deferential; we must "indulge in a strong presumption that counsel's conduct was *not* deficient." *Nava v. State*, 415 S.W.3d 289, 307–08 (Tex. Crim. App. 2013) (emphasis in original); *see also Strickland*, 466 U.S. at 689. To rebut that presumption, a claim of ineffective assistance must be "firmly founded in the record," and "the record must affirmatively demonstrate" the meritorious nature of the claim. *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012); *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). If trial counsel has not been afforded the opportunity to explain the reasons for his or her conduct, we will not find a deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Nava*, 415 S.W.3d at 308 (quoting *Menefield*, 363 S.W.3d at 593); *Goodspeed*, 187 S.W.3d at 392.

**Complaint Regarding Jury Selection**

In his first issue,[1] West complains of his attorney's treatment of venireperson 18, arguing that "trial counsel's failure to actually challenge the prospective juror for cause amounts to ineffective assistance of counsel." The record reveals that counsel initially objected to venireperson 18 for cause because "as a tow truck driver[,] he was speaking about [how] one should not refuse and if one refuses, then they're hiding guilt." When the trial court asked follow-up questions regarding the attempted for-cause challenge, counsel withdrew that challenge and used a peremptory strike on venireperson 18. *See* Tex. Code Crim. Proc.

---

[1] West has framed his appeal as presenting a single issue—ineffective assistance of counsel. Because he raises two distinct and unrelated arguments in support of his ineffective-assistance challenge, for clarity and convenience we will treat these arguments as two discrete issues. *See Niess v. State*, Nos. 03-11-00213-CR, 03-11-00214-CR, 03-11-00215-CR, 03-11-00216-CR, 03-11-00217-CR, 2012 WL 2383300, at *1 (Tex. App.—Austin June 21, 2012, no pet.) (mem. op., not designated for publication) ("Though Niess raises these arguments in thirteen separate points of error, for convenience we have grouped the points of error into four legal issues on appeal.").

art. 35.14 ("A peremptory challenge is made to a juror without assigning any reason therefor.").

After the court swore in and discharged the jury, the following colloquy ensued:

THE COURT: The jury is not present in the courtroom. Proceed with your objections, sir.

COUNSEL: Sorry, Judge. I thought you had said we would do this on Monday so—.

THE COURT: We're going to get it done today.

COUNSEL: Your Honor, basically my objection to the panel is that I was not able to use my voir dire to have the intelligent use of my preemptory strikes. I was curtailed when I was trying to question the jurors about levels of proof, about the exclusion of all doubt, reasonable doubt, excuse me, the – it lessened the burden of proof on the State and basically allows a jury to convict on less than proof beyond a reasonable doubt. In addition, when you were going over your specific—I guess your portion of the voir dire, one of the things that you stated was that a fair jury is one not having heard any of the evidence, is not committed to either side. For the record, I believe that's improper statement of the law and I believe that without having heard any of the evidence, the law is firmly on the side of the Defendant and it is not a—is not impartial to both sides at this point. So those are my objections, and I can go through the specific questions I would have asked for the record if you would like.

THE COURT: It's your case. What are your objections to the jury that's seated here?

COUNSEL: Well, just I wasn't able to intelligently use my preemptive strikes.

THE COURT: I've heard that. What's your objection to the 14 people over there?

COUNSEL: My understanding is to preserve it for error, I have to make my objection now rather than once the jury panel—

THE COURT: Make your objection.

COUNSEL: Is that—I'm sorry, Judge. I just want to make sure. You said I made this objection. Do I need to remake the objection as far as the—

THE COURT: I'm not going to tell you how to try your case. I've asked for objections.

COUNSEL: Okay. And then in addition to that, my other objection, as I stated earlier, was to Juror Number 18. I had asked for a challenge for cause to Juror Number 18. That was denied and I had to use one of my strikes on Juror Number 18, which prevented me from using that strike on Juror Number 26. So I asked for an additional strike. That was denied, so I object to that as well.

THE COURT: Anything else?

COUNSEL: No, Your Honor.

THE COURT: Okay. Thank y'all. I will see y'all Monday at 9:00.

On this record, West cannot prevail with his ineffective-assistance argument premised on counsel's withdrawal of the for-cause challenge to venireperson 18. The Court of Criminal Appeals has held that trial counsel's failure to challenge a venireperson who has voiced a lack of impartiality does not constitute per se ineffective assistance of counsel. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); *Delrio v. State*, 840 S.W.2d 443, 447 (Tex. Crim. App. 1992); *see also McKinley v. State*, No. 03-04-00009-CR, 2005 WL 366022, at *4 (Tex. App.—Austin Feb. 17, 2005, pet. ref'd) (mem. op., not designated for publication) (applying *Jackson* and *Delrio* to hold that defendant could not meet his burden on appeal to show ineffective assistance in counsel's failure to object to venireperson's placement on jury). In *Jackson*, a venireperson in a robbery case stated that he had been the victim of burglary and could not be impartial. *See* 877 S.W.2d at 769. Counsel did not challenge the venireperson for cause or use a peremptory challenge against him, and the trial court seated the venireperson on the jury. *See id*. Because the record contained no explanation of the strategy in counsel's failure to challenge the venireperson, the Court of Criminal Appeals was unable to conclude that assistance was ineffective. *See id*. at 771.

6

Similarly, in this case, it is not clear from the record why counsel chose to withdraw the for-cause objection to venireperson 18. Where the record is silent as to possible trial strategies, courts must not "speculate as to why counsel acted in a particular way." *McKinley*, 2005 WL 366022, at \*3 (citing *Jackson*, 877 S.W.2d at 771; *Mayhue v. State*, 969 S.W.2d 503, 511 (Tex. App.—Austin 1998, no pet.)). Thus, and because judicial review of a claim of ineffective assistance must remain highly deferential to trial counsel, *see id.*, on this record West cannot meet his burden to show deficient performance concerning venireperson 18. *See Strickland*, 466 U.S. at 700 (explaining that failure to make required showing of either deficient performance or sufficient prejudice defeats ineffectiveness claim). We therefore overrule the issue.

**Complaints Regarding Motion to Suppress**

In his second issue, West argues that he suffered ineffective assistance of counsel in that his counselors failed to file a timely motion to suppress the results of his bloodwork. A counselor's failure to file a motion to suppress is not per se ineffective assistance. *See Wert v. State*, 383 S.W.3d 747, 753 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986)). Counsel has no obligation to file futile motions. *See id.* (citing *Mooney v. State*, 817 S.W.2d 693, 698 (Tex. Crim. App. 1991)). To prevail on an ineffective-assistance claim premised on counsel's failure to file a motion to suppress, an appellant must show by a preponderance of the evidence that the motion would have been granted and that the remaining evidence would have been insufficient to support his conviction. *See id.* (citing *Jackson v. State*, 973 S.W.2d 954, 956–57 (Tex. Crim. App. 1998)).

To meet his burden, an appellant is required to produce evidence that would defeat the presumption of proper police conduct. *See id.* (citing *Jackson*, 373 S.W.2d. at 957).

In this case, West first argues that "untimeliness of the filing of the motion to suppress is in and of itself ineffective assistance of counsel that requires a new trial." But as just described, the failure to file a timely motion does not "in and of itself" establish ineffective assistance. *See Kimmelman*, 477 U.S. at 384; *Wert*, 383 S.W.3d at 753.

Next, although his argument is not entirely clear, West appears to argue that a timely motion to suppress might have been granted because the blood draw violated his constitutional right to remain free of unreasonable search and seizure. *See* U.S. Const. amend. IV; Tex. Const. art. I, § 9. Courts employ a two-part test to determine whether blood is drawn from a defendant in a constitutionally sound manner: first, the court considers whether the police had justification to require the suspect to submit to the draw; second, the court considers whether the police employed reasonable means and procedures in obtaining and analyzing the blood. *See State v. Johnston*, 336 S.W.3d 649, 658 (Tex. Crim. App. 2011).

West contends that police lacked the justification required to satisfy the first prong of the *Johnston* test because "[t]he warrant specifically provide[d] for the taking of blood from [West]; however, it d[id] not provide for the analyzation of that blood." In support of his argument, West offers *State v. Hardy*, 963 S.W.2d 516, 516 (Tex. Crim. App. 1997). *Hardy* involved a driver so badly injured in an automobile accident that he was promptly med-evaced to a nearby hospital, which drew his blood for medical purposes. *See id.* at 517–18. Prosecutors subsequently subpoenaed the results of the bloodwork, eventually learning that the driver's blood-alcohol level was .239 at the time of admission to the hospital, *see id.* at 518, and then charged him with misdemeanor driving while intoxicated. *See id.* The trial court granted a

motion to suppress, but the court of appeals reversed and remanded, holding that there is no "reasonable expectation of privacy in medical records in criminal cases." *See id*. The Court of Criminal Appeals agreed in part with the court of appeals, explaining that it would decline to determine "whether society recognizes a reasonable expectation of privacy in medical records in general" but holding that the Constitution recognizes no privacy interest in "blood-alcohol test results from tests taken by hospital personnel solely for medical purposes after a traffic accident." *See id.* at 527.

West contends that *Hardy* stands for the proposition that "two separate searches"—the draw itself and the subsequent analysis of that blood—"occur anytime blood is drawn" and suggests that Sergeant Stem needed to obtain two warrants: one for the blood draw and one for the subsequent laboratory analysis. But the Court of Criminal Appeals has expressly rejected this interpretation of precedent. *See Crider v. State*, 607 S.W.3d 305, 308 (Tex. Crim. App. 2020) ((holding that a search warrant authorizing a blood draw for evidence of intoxication also authorizes the testing of that blood). Moreover, even if West were correct that his interpretation of *Hardy* would have somehow rendered a motion to suppress successful, West has not shown how suppression of the evidence would have resulted in a different outcome. *See Jackson*, 973 S.W.2d at 956–57. To the contrary, the jury reviewed evidence that Hardy had a history of driving while intoxicated, that Sergeant Stem immediately noticed that West's speech was slurred and that he smelled of alcohol, that West's car contained multiple empty bottles of liquor, and that West repeatedly stated that he "had been drinking" and was "drunk" and therefore could not pass a field sobriety test. Because West has not shown how a timely filed

9

motion to suppress would have been successful such that he was prejudiced by counsel's decision, we overrule his issue.[2]

## CONCLUSION

Having overruled West's arguments on appeal, we affirm the judgment of conviction.

_____

Edward Smith, Justice

Before Justices Goodwin, Kelly, and Smith

Affirmed

Filed:   July 30, 2021

Do Not Publish

---

[2] West also raises an argument under the second prong of the *Johnston* test, *State v. Johnston*, 336 S.W.3d 649, 658 (Tex. Crim. App. 2011), contending that the State did not use reasonable procedures to draw his blood.  To be considered reasonable, the blood must be drawn in accordance with "accepted medical practices."  *Schmerber v. California*, 384 U.S. 757, 771 (1966); *see also State v. Fikes*, 585 S.W.3d 636 (Tex. App.—Austin 2019, no pet.).  West claims the draw was not reasonable in that the phlebotomist failed to sterilize his arm before inserting the needle.  However, the record reflects that West declined sterilization of his arm because he is "allergic to iodine."  West has produced no evidence that drawing his blood in this manner, under these circumstances, is unsanitary or in violation of established medical practices.  He therefore has not met his burden to show, by a preponderance of the evidence, that his motion would have been successful.  *See Siddiq v. State*, 502 S.W.3d 387, 403 (Tex. App.—Fort Worth 2016, no pet.) (holding defendant had produced "no evidence that the manner in which Doolittle performed the blood draw" was unreasonable); *State v. Daggett*, 640 N.W.2d 546, 550–51 (Wisc. Ct. App. 2001) (holding, under *Schmerber*, 384 U.S. at 771, that defendant could not prevail with argument that blood draw was unreasonable where defendant alleged but failed to produce any evidence that circumstances of blood draw were, in fact, "unsanitary").

10